DocuSign Envelope ID: 3BBBF392-5A7B-420B-0F47-76A569A3406E1

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

UNIVERAL PROTECTION SERVICE,
LLC, d/b/a ALLIED UNIVERSAL,
        Plaintiff,

                                    Court File No.:

v.

PROSEGUR SECURITY USA,
ADAM SHAPIRO, and WENDY WITLOW
        Defendants.

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Universal Protection Service, LLC d/b/a Allied Universal ("Allied Universal"), by and through its undersigned counsel, files this Verified Complaint for Injunctive Relief and Damages against Defendants Prosegur Security USA ("Prosegur"), Adam Shapiro ("Shapiro") and Wendy Witlow ("Witlow") (collectively "Defendants").

## INTRODUCTION

On July 19, 2023, Defendant Wendy Witlow, General Manager of Allied Universal's Miami office, contacted Adam Shapiro, Regional Director of Sales for a direct competitor, and told him she wanted out of her current role. "I'm gonna spend time every week getting out of this company," she proclaimed. Indeed, Defendant Witlow had already been feeding Defendant Shapiro confidential and proprietary Allied Universal sales leads for over a month. In exchange, Defendant Shapiro promised to "keep name dropping when I can …"

Indeed, in September 2023, Defendant Shapiro hired Defendant Witlow to work at his company, Prosegur, which constitutes a direct violation of the restrictive covenants that Defendant Witlow agreed to while still employed with Allied Universal. This was clearly done out of spite,

DocuSign Envelope ID: 3BBBF392-5A7B-420B-0F47-76A569A3406E

as Defendant Witlow wrote: "[Allied Universal] is gonna have a hard time finding someone to run my business they will but it's gonna be a shit show with a ton of losses[.]"

Based on this intentional and illegal conduct, Allied Universal requests emergency injunctive relief and damages based on: Defendant Witlow's deliberate and willful breach of employment agreements in violation of her express contractual and statutory obligations to Allied Universal; Witlow, Shapiro and Prosegur's conspiracy to misappropriate Allied Universal's trade secrets in violation of the Federal Defend Trade Secrets Act, 18 U.S.C. 183(b) and Florida's Uniform Trade Secrets Act, F.SA.§§ 688.001, et seq.; Witlow, Shapiro and Prosegur's tortious interference with Allied Universal's business relationships resulting in damages under Florida's common law; and Witlow's conversion, breach of fiduciary duty, and unjust enrichment.

## <u>PARTIES AND OTHER ENTITIES</u>

1.  Allied Universal is a limited liability company that provides security services to a wide range of industries including retail establishments, universities, and other business locations. Allied Universal's principal place of business is in Conshohocken, Pennsylvania.

2.  Prosegur Services Group, Inc. is subject to service of process through its registered agent, CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, STE. 620, Austin, Texas 78701. Prosegur's principal place of business is Herndon, Virginia.

3.  Wendy Witlow is a resident of Florida and a former managerial employee of Allied Universal. Upon information and belief, she may be served with process at 3230 Carambola Circle, Pompano Beach, FL 33066.

4.  Adam Shapiro is a resident of Florida and a Regional Director of Prosegur's Florida region. Upon information and belief he can be served at 6161 Blue Lagoon Drive; Miami, Florida 33126.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1331, as Allied Universal asserts claims that arise under the laws of the United States, namely, the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq.

6.      The Court has supplemental jurisdiction over Allied Universal's state-law and common law claims under 28 U.S.C. § 1367, because those claims are so related to Allied Universal's federal question claims that they form part of the same case or controversy.

7.      Venue is proper in this Court because Wendy Witlow and Adam Shapiro are domiciled in Florida and the actions and events complained of in this lawsuit were coordinated from and substantially occurred and resulted in damages in Miami, Florida and surrounding areas.

## PROSEGUR'S PATTERN AND PRACTICE OF TORIOUSLY INTERFERING WITH RESTRICTIVE COVENANTS

8.      Prosegur is no stranger to trade secret/restrictive covenant litigation in the security industry.

9.      Notably, Securitas Security Services USA, a direct competitor of both Allied Universal and Prosegur, is currently litigating two trade secret/restrictive covenant matters against Prosegur, alleging that Prosegur and other individuals at the company engaged in tortious interference with restrictive covenants.

10.      *Securitas Security Services USA Inc. v. Pollard and Prosegur Security USA Inc.*, Case No. 2:23-cv-809 (N.D. Ala.), alleges that, among other things, Defendant Prosegur tortiously interfered with Defendant Pollard's restrictive covenants, as well as utilizing confidential Securitas information misappropriated by Defendant Pollard. (**Exhibit 1, "Pollard Amended Complaint"**).

11.      In the *Pollard* matter, Defendants Prosegur and Pollard agreed to a stipulated Preliminary Injunction. (**Exhibit 2, "Stipulated Permanent Injunction"**).

3

12.    In *Securitas Security Services, Inc. v. Daniel and Prosegur Security, Inc.*, 3:23cv948 (M.D. Tenn.), Securitas likewise alleges that Prosegur has tortiously interfered with Defendant Daniel's restrictive covenants, along with Securitas' business relationships. (**Exhibit 3, "Daniel Complaint"**).

13.    Finally, Allied Universal also sued Prosegur in June of this year, when Prosegur hired an entire team of Allied Universal employees in San Antonio, resulting in allegations of violations of each employee's restrictive covenant agreement, tortious interference against Prosegur, and misappropriation of Allied Universal trade secrets. *See Universal Protection Service, LP, v. Schiller, Solis-Ramirez, Sanchez, Vallejo, Cruz, Kriger & Prosegur* (**Exhibit 4, "Second Amended Schiller Complaint"**).

14.    In the *Schiller* case, Prosegur again entered into a consent Permanent Injunction. (**Exhibit 5, "Stipulated Permanent Injunction"**).

15.    Prosegur and its employees find themselves in the unenviable position of being repeatedly sued for tortious interference and misappropriation of trade secrets, along with other business torts, because Prosegur has no policies or procedures in place to screen for employment agreements and make sure that incoming employees do not violate those agreements.

## FACTUAL BACKGROUND

### A.  Allied Universal's Business Operations.

16.    Allied Universal is a security services company. It provides customized security solutions and to a wide array of business and sites, including offices, retail establishments, storage facilities, construction sites, and other locations throughout the United States.

17.    The security services landscape is an ever-evolving industry that has changed significantly since Allied Universal's inception and is highly competitive.

18.    As part of its business, Allied Universal has developed customized business plans

DocuSign Envelope ID: 3BBBF302-5A7B-420B-0E47-76A569A3406E

for its clients that are the primary key to its growth and success. Allied Universal has also researched and invested in technology and strategically implemented the tools that are best suited to each of its individual customers. Allied Universal works with each customer to design custom and cost-effective security solutions to fit that customer's needs. Every customer has different security needs due to its business, user demographic, and requests of the owners and operators. Even among similar businesses, the best approach will differ based on the structure of its facilities and preferences of the individual owners or operators.

19.     Allied Universal maintains a substantial amount of confidential, proprietary and/or trade secret information including, but not limited to, customer lists; research and other information relating to customers, prospective customers and referral sources; marketing and sales strategies; strategic plans and business methods; pricing; coding, invoice and billing information; bid information, proposals, and quotes; information relating to compensation of employees; processes; protocols; designs; technical data; research; trade secrets; services; data; techniques; inventions (whether patentable or not); works of authorship; and other information concerning Allied Universal's actual or anticipated business, research or development and other confidential or proprietary information, which relates to Allied Universal's business, all of which has been developed, researched and/or acquired by Allied Universal with considerable effort and expense.

20.     This information is confidential to Allied Universal and is not readily available to competitors or the general public. To protect its investment, Allied Universal takes steps to protect the confidentiality of its information, such as restricting access to the information, password protecting its servers and individual devices, and requiring employees who have access to this information to sign confidentiality agreements. This information presents Allied Universal with

DocuSign Envelope ID: 3BBBF392-5A7B-420B-0F47-76A569A3406F

the opportunity to obtain a significant economic and competitive advantage over its competitors who do not know it.

**B. Witlow's Employment With And Termination From Allied Universal.**

21. Wendy Witlow was hired as a Client Manager by AlliedBarton Security Services, LLC ("AlliedBarton"), on October 13, 2014.

22. On or around August 2016, AlliedBarton and Universal Services of America, Inc. merged to form Allied Universal.

23. Witlow became an employee of Allied Universal through the merger.

24. While employed with Allied Universal, Witlow was promoted to General Manager of the Miami region.

25. As General Manager, Witlow's job duties were complex and dynamic; she was responsible for leading a team of nearly 2,000 security professionals.

26. Witlow was in a leadership position of trust with Allied Universal, she managed a portfolio of business with clients from commercial, residential, distribution, and retail backgrounds. Witlow also developed and expanded business.

27. Specifically, Witlow increased revenue on her team by several million dollars through the COVID-19 Pandemic.

28. To develop business and function as General Manager of the Miami region, Allied Universal provided Witlow with access to highly confidential and trade secret information regarding company operations and financials, training modules, as well as significant information related to Allied Universal's customers and clients.

29. Witlow was also provided access to confidential Allied Universal leads for new customers – leads that had been carefully developed by Allied Universal.

30.     As General Manager of the Miami region, Witlow was responsible for, among other things, branch profitability, generating and retaining new business, planning for future operational growth and expansion, and overseeing Directors of Operations and Client Managers.

31.     Allied Universal expended substantial resources to develop Witlow's relationships and familiarity with the clients. These relationships were developed for the benefit of Allied Universal, not Witlow individually.

**C.     Witlow's Employment Agreement and the Incentive Units Agreement Contain Enforceable Post-Employment Restrictions.**

32.     As a condition of her offer of employment, and in exchange for access to Allied Universal's confidential and proprietary information, Witlow entered an Agreement with Allied Universal containing various post-employment obligations on October 13, 2014.  (**Exhibit 6, "Employment Agreement"**).

33.     As a further benefit of employment with Allied Universal, Witlow entered an incentive units and restrictive covenants agreement, granting her incentive units and additional access to Allied Universal's confidential information. (**Exhibit 7, "Incentive Units Agreement"**).

34.     The Employment Agreement and the Incentive Units Agreement maintain several provisions intended by the parties to protect Allied Universal against the unfair use of its information and goodwill.

35.     The Employment Agreement contains a non-solicitation provision which provides, in relevant part:

> [I]n consideration of the promises and covenants herein… the parties, intending to be legally bound, agree as follows:
>
>     (6) Non-Solicitation of Customers and Non-Acceptance of Business:

DocuSign Envelope ID: 3BBBF392-5A7B-420B-0F47-76A569A3406E

(a) Employee agrees that while employed by Employer and for a period of one (1) year following the termination of employment for any reason, Employee will not, directly or by assisting others, solicit any customer or prospective customer of Employer with whom Employee had material contact, for whom Employee had managerial responsibility, or about whom employee learned Confidential Information during his or her employment. This agreement "not to solicit" means that Employee will not initiate any contact with, respond to any inquires from, or otherwise have any communication of any kind with any such customer or prospective customer, for the purpose of offering said customer or prospective customer security, security guard or investigative services or inviting, encouraging or requesting any such customer or prospective customer:

      (i)     to transfer its security, security guard or investigative services business to Employee, Employee's new employer, or with any other third party; or

      (ii)    to conduct new security, security guard or investigative services or business with Employee, Employee's new employer, or any other third party; or

      (iii)   to otherwise discontinue its patronage of Employer.

(7) Non-Solicitation and Non-Hire of Employees:

Employee agrees that while employed by Employer and for a period of one (1) year following termination of employment for any reason, Employee will not, directly or by assisting others, recruit or hire, attempt to recruit or hire, induce, solicit, or attempt to influence any employee, agent, or representative of Employer to leave the employ of Employer.

36. The Incentive Units Agreement provides, in relevant part:

In exchange for the Participant entering into this Restrictive Covenant Agreement, the Company has agreed to award Incentive Units to the Participant and to provide Participant with continued and additional access to confidential information, goodwill and specialized training. Participant agrees that (a) Participant would not be eligible for the Incentive Units and increased access to confidential information but for Participant signing this Restrictive Covenant Agreement, and (b) this Restrictive Covenant Agreement is supported by good and valuable consideration, to which Participant is not otherwise entitled.

     3. <u>Restrictive Covenants</u>. In consideration of the award of

DocuSign Envelope ID: 3BBBF392-5A7B-420B-0F47-76A569A3406E

Incentive Units pursuant to the Grant Agreement and Participant's access to confidential information and specialized training, the sufficiency of which consideration is hereby acknowledged, Participant agrees to the following covenants and their terms:

A. <u>Confidential Information</u>. Participant agrees and acknowledges that the Company has developed Confidential Information at great time and expense and further agrees that the Company has provided and/or will provide and will continue to provide Participant with access to Confidential Information and specialized training. Participant covenants and agrees that, except to the extent the use or disclosure of any Confidential Information is required to carry out Participant's assigned duties with the Company, during Participant's employment with the Company and for as long as such information remains commercially valuable and non-public, but in no event for no less than five (5) years after the end of Participant's employment: (a) Participant shall keep strictly confidential and not disclose to any person not employed by the Company any Confidential Information; and (b) Participant shall not use for Participant or for any other person or entity any Confidential Information. This provision shall not preclude Participant from the use or disclosure of information known generally to the public (other than information known generally to the public as a result of Participant's violation of this Section).

B. <u>Non-Competition</u>. Participant covenants and agrees that during Participant's employment with the Company and for a period of twelve (12) months following Participant's last day of employment with the Company, Participant shall not: (a) engage in any Competitive Activity (as defined below) within the Prohibited Territory (as defined below); or (b) assist anyone else in engaging in Competitive Activity within the Prohibited Territory.

    i. <u>"Competitive Activity"</u> means competing against the Company by performing the same or substantially similar work as Participant performed on behalf of the Company at any time during the last twelve (12) months of employment with the Company or performing work that requires the use of or disclosure of Confidential Information anywhere in a Prohibited Territory for an entity engaged in the Business (as defined below). Notwithstanding the preceding, owning the stock or options to acquire stock totaling less than 5% of the

9

outstanding shares in a public company shall not constitute, by itself, Competitive Activity.

C.  <u>Customer Non-Solicitation and Non-Interference</u>. Participant covenants and agrees that during Participant's employment with the Company and for a period of twenty-four (24) months following Participant's last day of employment with the Company, Participant shall not, directly or indirectly: (a) solicit, encourage, cause or attempt to cause any Restricted Customer (as defined below) to purchase any services or products from any business other than the Company that are competitive with or a substitute for the services or products offered by the Company, (b) sell or provide any services or products to any Restricted Customer that are competitive with or a substitute for the Company's services or products; (c) solicit, encourage, cause or attempt to cause any supplier of goods or services to the Company not to do business with or to reduce any part of its business with the Company; or (d) make any disparaging remarks about the Company or its business services, affiliates, officers, managers, directors or management employees, whether in writing or verbally, to any Restricted Customer.

D. <u>Employee Non-Solicitation and Non-Raiding</u>. Participant covenants and agrees that during Participant's employment with the Company and for a period of twenty-four (24) months following Participant's last day of employment with the Company, Participant shall not, directly or indirectly: (a) hire as an employee or as an independent contractor any person then-employed by the Company, (b) recruit, solicit or encourage any employee to leave his or her employment or engagement with the Company; and/or (c) hire or engage any person employed by the Company at any point during Participant's last six (6) months with the Company.

**D.  Defendant Witlow's Substantial Violations of the Employment Agreement and the Incentive Units Agreement.**

37.  On August 7, 2023, Allied Universal terminated Witlow for falsifying an email concerning an employee removal from a client site.

38.  Around the same time, Allied Universal discovered that Witlow had utilized her company credit card for personal expenses in direct violation of several Allied Universal policies.

39.  An audit of Witlow's business expenses revealed she had a total of 201 transactions

DocuSign Envelope ID: 3BBBF393-5A78-430B-9E47-76A569A34065

in 2023, and at least 90 of them violated company policy.

40.     Witlow inappropriately incurred at least thousand of dollars in expenses for personal use, including $902.00 spent booking a hotel and renting a car while on vacation.

41.     On or around September 2023, Witlow became employed by Prosegur, a security services provider and direct competitor of Allied Universal.

42.     Upon information and belief, Witlow's responsibilities at Prosegur are similar to – and occur in the same geographic territory – as her responsibilities during her employment at Allied Universal.

43.     Upon information and belief, Witlow intends to solicit and/or has already solicited Allied Universal customers with whom she had contact and/or managerial responsibilities during her employment with Allied Universal.

44.     Upon information and belief, Witlow intends to solicit and/or has already solicited Allied Universal employees with whom she had contact and/or a managerial relationship during her employment with Allied Universal.

45.     Prior to her termination, Witlow and Adam Shapiro, Prosegur's Director of Business Development for the Florida region, extensively discussed leads Witlow would provide to Shapiro and her desire to join Prosegur.

46.     Shapiro was a Business Development Manager for AlliedBarton from January 2011 to December 2017. During this time, he became familiar with the Company's employment agreements including the non-compete, confidentiality, and non-disclosure provisions.

47.     In early June 2023, Shapiro texted Witlow's Allied Universal company cell phone that he had and would continue to mention Witlow's name to Prosegur's sales leaders to familiarize them with her.

---

💬 **CHAT - CB0000001 - 00172 - 2023/06/09**

WW  **Wendy Witlow <+1 (954) 531-8321>**                                    6/9/2023, 10:27 AM
I was already linked into him lol I think I know him from when I was in sales at SFI ?

AS  **Adam Shapiro <+19542428665>**                                        6/9/2023, 10:35 AM
Ah that's possible. I am on with him and my senior vp of sales teams call. I mentioned you again to them

WW  **Wendy Witlow <+1 (954) 531-8321>**                                    6/9/2023, 10:35 AM
Nice

---

💬 **CHAT - CB0000001 - 00172 - 2023/06/09**

AS  **Adam Shapiro <+19542428665>**                                        6/9/2023, 3:17 PM
I'll keep name dropping when I can 😊

WW  **Wendy Witlow <+1 (954) 531-8321>**                                    6/9/2023, 3:17 PM
Cool

---

48.     Eleven (11) days after Shapiro mentioned Witlow's name to sales leaders at Prosegur, Shapiro requested business leads from Witlow to which Witlow responded indicating she had several.

[IMAGE ON FOLLOWING PAGE]

AS    Adam Shapiro <+19542428665>                                    6/20/2023, 9:49 AM
      Hey! Where my leads

AS    Adam Shapiro <+19542428665>                                    6/20/2023, 9:49 AM
      Attached URL: https://p27-
      content.icloud.com/MCC8A8A1403A2D9A9DAF6DD05988753023459DEAB70358D73D6AEEECA1E41BA2A.C01USN00
      Attachment Title: 4B7E5459-E215-4958-8EA0-
      22C2453267A0_AK325401000_257ebad15f527979dc2aad7e0475f29c_face_with_tears_of_joy.png



      Image: 4B7E5459-E215-4958-8EA0-
      22C2453267A0_257ebad15f527979dc2aad7e0475f29c_face_with_tears_of_joy.png (88 KB)

AS    Adam Shapiro <+19542428665>                                    6/20/2023, 9:49 AM
      Hope you're well!!!

WW    Wendy Witlow <+1 (954) 531-8321>                                6/20/2023, 9:52 AM
      Sorry I got crazy. Let's connect tomorrow. I've got several for you.

AS    Adam Shapiro <+19542428665>                                    6/20/2023, 9:53 AM
      You rock! Funny going through old emails and your name popped up made me think of you

49.    Witlow and Shapiro had several discussions plotting Witlow's departure from

Allied Universal to Prosegur.

💬   CHAT - CB0000001 - 00172 - 2023/07/19

AS    Adam Shapiro <+19542428665>                                    7/19/2023, 5:21 PM
      I can try Fernando tomorrow just to feel him out and get them talking, it helps

WW    Wendy Witlow <+1 (954) 531-8321>                                7/19/2023, 5:21 PM
      Liked "I can try Fernando tomorrow just to feel him out a…"

WW    Wendy Witlow <+1 (954) 531-8321>                                7/19/2023, 5:21 PM
      I'm gonna spend time every week getting out of this company. I hope it's working with yours.

CHAT - CB0000001 - 00172 - 2023/07/19

AS   Adam Shapiro <+19542428665>                                    7/19/2023, 6:36 PM
     Spoke with Fernando. I'll fill you in tomorrow. Could be good

WW   Wendy Witlow <+1 (954) 531-8321>                               7/19/2023, 6:36 PM
     Liked "Spoke with Fernando. I'll fill you in tomorrow. Co…"

CHAT - CB0000001 - 00172 - 2023/07/19

AS   Adam Shapiro <+19542428665>                                    7/19/2023, 5:23 PM
     I don't blame u, the disrespect disgusts me

WW   Wendy Witlow <+1 (954) 531-8321>                               7/19/2023, 5:24 PM
     Me too they're gonna have a hard time finding someone to run my business they will but it's gonna be a shit show with a
     ton of losses

WW   Wendy Witlow <+1 (954) 531-8321>                               7/19/2023, 5:24 PM
     I can't wait

50.     As seen in the text messages, it is clear Witlow provided Shapiro with private Allied Universal business leads in exchange for a position at Prosegur, Allied Universal's direct competitor.

51.     Witlow joined Prosegur just a few weeks after her discussions with Shapiro.

52.     Upon discovering Witlow's acceptance of a competing position with Prosegur, Allied Universal sent correspondence to Witlow reminding and informing her of her post-employment contractual obligations.  **(Exhibit 8, "Post-Employment Reminder Letter").**

53.     Witlow did not respond to the Post-Employment Reminder Letter.

54.     Witlow's continued conduct constitutes deliberate violations of the Employment Agreement and the Incentive Units Agreement.

55.     Allied Universal has no adequate remedy at law.

56.     Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to

14

a restraining order preventing Defendants Witlow, Shapiro, and Prosegur from continuing to engage in misconduct and in violation of the Agreements, along with applicable damages.

**COUNT I**
**BREACH OF CONTRACT**
**(Against Witlow)**

57.     Allied Universal incorporates all prior paragraphs of its Complaint.

58.     The Employment Agreement and Incentive Units Agreement (collectively the "Agreements") are valid, legally binding, and enforceable contracts.

59.     Allied Universal performed all its obligations under the Agreements and any condition precedent has occurred or has been performed.

60.     Witlow openly expressed her intent to breach the Agreements via text conversations with Prosegur before she was terminated and ultimately breached them when she provided Shapiro with confidential and proprietary Allied Universal business leads during her employment and accepted employment with Prosegur following her separation from Allied Universal.

61.     In addition to breaching the Agreements during her employment, she also breached the Agreements after she was terminated by working for Prosegur, a direct competitor of Allied Universal, in violation of her post-employment covenants.

62.     Witlow refused to cease her unlawful conduct and remains employed by Allied Universal's direct competitor, Prosegur, which constitutes a breach of the Agreements.

63.     Specifically, Witlow breached Section 6(a) of the Employment Agreement and Section 3(A) of the Incentive Units Agreement by supplying Shapiro with business leads she gained through her access to Allied Universal's confidential and proprietary information during her employment.

64.     In addition, Witlow breached Section 3(B) of the Incentive Units Agreement by

DocuSign Envelope ID: 3BBBF393-5A78-430B-9E47-76A569A34065

maintaining employment with Prosegur in a similar capacity and in the same geographic territory as during her employment with Allied Universal, and within 12 months of resigning from employment with Allied Universal.

65.     Upon information and belief, Witlow has breached the Employment Agreement and Incentive Units Agreement by soliciting or planning to solicit Allied Universal customers with whom she had contact and/or managerial responsibilities during her employment with Allied Universal.

66.     Upon information and belief, Witlow has breached the Employment Agreement and Incentive Units Agreement by soliciting or planning to solicit Allied Universal employees with whom she had contact and/or a managerial relationship during her employment with Allied Universal.

67.      As a result of these ongoing and future breaches, Allied Universal has been injured and will continue to suffer damages in an amount to be determined at trial.

68.     Allied Universal will suffer irreparable harm if Witlow is not enjoined from further violation of the Agreements, and if Witlow is not directed to comply with her Employment Agreement and Incentive Units Agreement by, *inter alia*, halting employment with Prosegur in a capacity that violations the Incentive Units Agreement.

69.     The present circumstances deprive Allied Universal of an adequate remedy at law, as money damages alone cannot fully compensate Allied Universal for Witlow's breach of the Agreements.

70.     Injunctive relief is warranted and necessary to prevent future irreparable harm.

DocuSign Envelope ID: 3BBBF393-5A78-430B-9E47-76A569A34065

## COUNT II
## <u>BREACH OF FIDUCIARY DUTY</u>
### <u>(Against Witlow)</u>

71.     Allied Universal incorporates all prior paragraphs of its Complaint.

72.     As an employee of Allied Universal, Witlow owed certain fiduciary duties to Allied Universal including, without limitation, the fiduciary duties of loyalty, care, and good faith.

73.     In breach of these fiduciary duties, Witlow misappropriated Allied Universal's confidential information for her personal benefit and deprived Allied Universal of her loyal services.

74.     Witlow disregarded her fiduciary duties when she provided Shapiro with confidential and proprietary Allied Universal business leads.

75.     Unless enjoined, Witlow's unlawful acts will materially and irreparably injure Allied Universal's business in a manner that cannot be adequately compensated in money damages.

76.     Allied Universal will unfairly and unlawfully lose the competitive advantages that it enjoys as a result of its confidential information and suffer further damage to its goodwill and the loss of actual prospective customers.

77.     Injunctive relief is warranted and necessary to prevent additional irreparable harm.

## COUNT III
## <u>VIOLATION OF DEFEND FLORIDA UNIFORM</u>
## <u>TRADE SECRETS ACT</u>
### (Against All Defendants)

78.     Allied Universal incorporates all prior paragraphs of this Complaint.

79.     Allied Universal's highly confidential trade secrets include, but are not limited to, financial information; bidding information; and other performance and competitive data. These documents, materials, and information constitute trade secrets protected under the Florida

Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001 et. seq.

80.     Allied Universal has taken and continues to take reasonable steps to maintain the secrecy of these trade secrets. These trade secrets are not generally known or readily ascertainable by other persons who could obtain economic value from their disclosure or use.

81.     Allied Universal is the owner of these trade secrets because it had the rightful title to the trade secrets, having developed and protected them as described above.

82.      As described above, Witlow had access to and used Allied Universal's most highly confidential data and materials while engaging with Allied Universal.

83.     Witlow's position of Security Management with Prosegur substantially overlaps her responsibilities at Allied Universal. In this capacity for Prosegur, it is inevitable that she will use and disclose Allied Universal's trade secrets in the performance of her duties and for the benefit of Prosegur, even if she were to make good faith attempts to avoid using such trade secrets.

84.     Witlow has disclosed and will continue to disclose or will inevitably disclose and use Allied Universal's trade secrets for the benefit of Prosegur, thus misappropriating such information is a violation of the FUTSA.

85.     Shapiro is likewise in possession of Allied Universal trade secrets, and upon information and belief, he has used or intends to use such trade secrets for his own and/or Prosegur's benefit.

86.     As an agent of Prosegur, Shapiro's possession of Allied Universal's trade secrets is imputed to Prosegur.

87.     The acts and threatened acts of misappropriation or misuse by Defendants have directly and proximately caused and will continue to cause substantial damage to Allied Universal.

DocuSign Envelope ID: 3BBBF393-5A78-430B-9E47-76A569A34065

88.     Defendants have been unjustly enriched by the information wrongfully obtained from Allied Universal.

89.      At all material times, Defendants' conduct was wanton, willful, and malicious.

90.     Disclosure or use of Allied Universal's trade secrets will result and has resulted in immediate and irreparable harm to Allied Universal for which there is no adequate remedy at law.

91.     Injunctive relief is necessary to prevent further irreparable injury.

**COUNT IV**
**VIOLATION OF DEFEND TRADE SECRETS ACT**
**(Against All Defendants)**

92.     Allied Universal incorporates all prior paragraphs of this Complaint.

93.     At all times relevant to the claims at issue in this litigation, Allied Universal maintained a protectable interest in its confidential and trade information.

94.     This information was and is extremely valuable to Allied Universal and steps were taken to ensure that the information remained secret.

95.     This information is not available to the general public and is closely guarded by Allied Universal. Allied Universal keeps such information strictly confidential to protect its customers' privacy and to maintain a competitive advantage in the security industry.

96.     Allied Universal's confidential information, including the confidential and proprietary information identified above, is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, et seq. ("DTSA") because the information is not generally known outside of Allied Universal's business, the information is not generally known by employees and others involved in Allied Universal's business, Allied Universal has taken reasonable measures to guard the secrecy of the information, the information is of great value to Allied Universal and its competitors, Allied Universal invested significant amounts of time and money in developing

DocuSign Envelope ID: 3BBBF393-5A78-430B-9E47-76A569A34065

the information, the information cannot easily be acquired or duplicated by others, and Allied Universal continuously uses the information in its business.

97.     Witlow was under an obligation to keep such confidential information and trade secret information secret.

98.     In her current employment with Prosegur, Witlow is positioned to use and/or disclose such confidential and trade secret information to unfairly compete with Allied Universal.

99.     Shapiro is likewise in possession of Allied Universal trade secrets, and upon information and belief, he has used or intends to use such trade secrets for his own and/or Prosegur's benefit.

100.    As an agent of Prosegur, Shapiro's possession of Allied Universal's trade secrets is imputed to Prosegur.

101.    Witlow has threatened misappropriation of the information by her inevitable disclosure of the trade secrets for Prosegur's competitive advantage and to the detriment of Allied Universal.

102.    Witlow's position of Security Management with Prosegur substantially overlaps her responsibilities at Allied Universal. In this capacity for Prosegur, it is inevitable that she will use and disclose Allied Universal's trade secrets in the performance of her duties and for the benefit of Prosegur, even if she were to make good faith attempts to avoid using such trade secrets.

103.    Witlow has disclosed and will continue to disclose or will inevitably disclose and use Allied Universal's trade secrets for the benefit of Prosegur.

104.    Witlow's conduct violates DTSA.

105.    Witlow has ignored her contractual obligations by retaining Allied Universal's confidential information and trade secrets.

106.    Actual or threatened misappropriation of confidential information and/or trade secrets may be enjoined under the DTSA.

107.    Unless Defendants are enjoined from using and disclosing Allied Universal's trade secrets, Allied Universal will suffer severe and incalculable disadvantages in its future relationship with its customers and other businesses, in competing with Prosegur, maintaining its customer base, and in keeping its trade secret information confidential.

108.    Defendants' misappropriation has been and continues to be willful and malicious.

109.    Defendants' conduct will irreparably harm Allied Universal and unless injunctive relief is granted Allied Universal will suffer further irreparable injury.

110.    Allied Universal does not have an adequate remedy at law.

111.    Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary and permanent injunction to prohibit Defendants from continuing to engage in misconduct and in violation of the Agreements, along with applicable damages.

**COUNT V**
**VIOLATION OF FLORIDA DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT**
**(Against All Defendants)**

112.    Allied Universal incorporates all prior paragraphs of this Complaint.

113.    Witlow – by and through various breaches of contract, breach of her duty of loyalty to Allied Universal, and misappropriation of trade secrets for her own benefit – has engaged in deceptive and unfair trade practices.

114.    Additionally, Witlow's disclosure of Allied Universal's private business leads was a violation of Florida Deceptive and Unfair Trade Practices Act.

115.    Shapiro, by soliciting and accepting Allied Universal's trade secrets, and by

21

DocuSign Envelope ID: 3BBBF393-5A78-430B-9E47-76A569A34065

inducing Witlow to violate her Agreements, has engaged in deceptive and unfair trade practices.

116.     Prosegur, by soliciting and accepting Allied Universal trade secrets, has engaged in deceptive and unfair trade practices.

117.     As a direct and proximate result of the foregoing, Allied Universal has and will continue to suffer harm and loss, and sustained damages, including but not limited to loss of confidentiality of Allied Universal's clients' private information, loss of valuable business relationships, loss of opportunity of obtaining and/or retaining valuable business relationships, loss of profits and future profits, loss of reputation, and loss of goodwill.

118.     Defendants' conduct will irreparably harm Allied Universal and unless injunctive relief is granted, Allied Universal will suffer further irreparable injury.

119.     Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary and permanent injunction to prohibit Defendants from continuing to engage in misconduct and in violation of the Agreements, along with applicable damages.

## COUNT VI
## TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS
### (Against Prosegur and Shapiro)

120.     Allied Universal incorporates all prior paragraphs of this Complaint.

121.     Allied Universal maintained valid contracts with Witlow specifying her employment and post-employment obligations.

122.     Allied Universal expected the contracts would continue, and all obligations would be fulfilled until the expiration of all relevant terms and provisions.

123.     Witlow's post-employment obligations under the applicable Agreements remain in full force.

DocuSign Envelope ID: 3BBBF393-5A78-430B-9E47-76A569A34065

124.     Specifically, the non-competition covenant remains operative for twelve (12) months after separation from Allied Universal.

125.     The non-interference, non-solicitation, and non-raiding remain operative for twenty-four (24) months after separation from Allied Universal.

126.     The confidentiality and non-disclosure covenants remain operative for five (5) years after separation from Allied Universal.

127.     Shapiro was and is keenly aware of the Agreements between Allied Universal and Witlow. He gained direct knowledge of the Agreements during his seven (7) year tenure with Allied Universal.

128.     Specifically, Shapiro – acting on behalf of Prosegur – sought and obtained business leads from Witlow despite awareness that this violated the Agreements.

129.     Shapiro was aware that Witlow obtained these leads through her exclusive access to Allied Universal's confidential and proprietary information as he previously had access to similar information while employed at Allied Universal.

130.     Shapiro is an agent of Prosegur whose knowledge and actions can be imputed to Prosegur.

131.     Despite that awareness, Prosegur intentionally and unjustifiably interfered with the Agreements by soliciting business leads and hiring the Witlow for an employment position that would require her to violate the terms of their Agreements.

132.     Specifically, Prosegur has employed Witlow in a Security Management role that will inevitably lead to the disclosure of Allied Universal's trade secret information.

133.     Prosegur and Shapiro's interference was not privileged or justified.

134.     Prosegur and Shapiro's interference caused Witlow to violate her employment and

DocuSign Envelope ID: 3BBBF393-5A78-430B-9E47-76A569A34065

post-employment obligations with Allied Universal by, among other things, unlawfully providing Prosegur and Shapiro with business leads from Allied Universal and obtaining employment by a direct competitor in violation of the non-competition provision of the Agreements, and divulging Allied Universal's confidential and/or trade secret information.

135.     Prosegur and Shapiro received revenue and profits because of their joint misconduct, to which they are not entitled.

136.     Allied Universal has also suffered damages because of Prosegur and Shapiro's conduct, including loss of substantial training investment in Witlow.

137.     Allied Universal has no adequate remedy at law.

138.     Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary and permanent injunction to prohibit Defendants from continuing to engage in the misconduct in this Verified Complaint, along with applicable damages.

**COUNT VII**
**CONSPIRACY TO MISAPPROPRIATE TRADE SECERETS**
**DEFEND TRADE SECRETS ACT – 18 U.S.C. §§ 1832, 1836 et seq.**
**(Against All Defendants)**

139.     Allied Universal incorporates all prior paragraphs of this Complaint.

140.     Defendants conspired collectively to misappropriate trade secrets with the intent to convert them for use in interstate or foreign commerce.

141.     Specifically, Witlow and Shapiro (acting as an agent of Prosegur) entered an agreement for Witlow to provide Shapiro with Allied Universal's private business leads to defraud Allied Universal and convert and misappropriate Allied Universal's confidential, proprietary, and trade secret information, and its property.

142.     Defendants have taken affirmative steps in furtherance of these conspiracy

DocuSign Envelope ID: 3BBBF393-5A78-430B-9E47-76A569A34065

agreements, when they texted about exchanging Allied Universal's private business leads and when Witlow informed Shapiro she would furnish him with these leads, proximately damaging Allied Universal.

143.    Defendants had a meeting of the minds on exchanging Allied Universal's business leads, and at least one member of each conspiracy committed at least one unlawful, overt act, to further the object or course of action. Shapiro (acting as an agent of Prosegur) unlawfully requested trade secrets from Witlow and Witlow agreed to provide them.

144.    Allied Universal suffered injury as a proximate result of these wrongful acts.

145.    Allied Universal further requests that all Defendants be held jointly and severally liable for their acts and be ordered to pay all actual and consequential damages from their wrongful conduct.

146.    Because Defendants' actions in this conspiracy and the underlying torts were intentional, malicious, knowing and grossly negligent, the award of exemplary damages is appropriate.

147.    Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary and permanent injunction to prohibit Defendants from continuing to engage in misconduct and violation of the Agreements, along with applicable damages.

## COUNT VIII
## COMMON LAW CIVIL CONSPIRACY
### (Against All Defendants)

148.    Allied Universal incorporates all prior paragraphs of this complaint.

149.    Defendants conspired collectively to accomplish unlawful purposes and torts discussed in this complaint.

150.    Defendants entered into one or more agreements for the purpose of defrauding

Allied Universal and committing the conversion and misappropriation of Allied Universal's confidential, proprietary, and trade secret information.

151. Defendants have taken affirmative steps in furtherance of these conspiratorial agreements, proximately damaging Allied Universal.

152. Defendants had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action.

153. Allied Universal suffered injury as a proximate result of these wrongful acts.

154. Allied Universal further requests that Defendants be held jointly and severally liable for their acts and be ordered to pay all actual and consequential damages resulting from their wrongful conduct.

155. Because their actions in this conspiracy and the underlying torts were intentional, malicious, knowing, and grossly negligent, the award of exemplary damages is appropriate.

## COUNT IX
## CONVERSION
### (Against All Defendants)

156. Allied Universal incorporates all other paragraphs of this Complaint.

157. Defendants are in possession of Allied Universal's trade secrets and confidential information.

158. Defendants wrongfully asserted dominion or control over Allied Universal's property and rights in a manner inconsistent with Allied Universal's ownership and entitlement.

159. Witlow provided Shapiro with Allied Universal's confidential and proprietary information which Shapiro is current in possession of.

160. Additionally, Witlow is in possession of money taken during her employment. Specifically, Witlow retains thousands of dollar, which she improperly obtained from Allied

Universal through personal use of her business credit card for extensive non-business-related expenses.

161.    As a direct and proximate result of Defendants conversion of Allied Universal's property, Allied Universal has sustained substantial damages in an amount to be determined at trial.

162.    Allied Universal has no adequate remedy at law.

## COUNT X
## UNJUST ENRICHMENT
### (Against Witlow)

163.    Allied Universal incorporates all other paragraphs of this Complaint.

164.    Through inappropriate use of Allied Universal's company credit card to charge personal expenses, which Allied Universal paid without recompense by Witlow, Allied Universal conferred a benefit on Witlow.

165.    Witlow has appreciated and enjoyed said benefit conferred by Allied Universal.

166.    Witlow has accepted and retained said benefit conferred by Allied Universal.

167.     It would be inequitable for Witlow to retain said benefit without paying the value of it to Allied Universal.

## COUNT XI
## MONEY LENT
### (Against Witlow)

168.    Allied Universal incorporates all other paragraphs of this Complaint.

169.    By Plaintiff improperly charging personal expenses to the company credit card, which Allied Universal paid, without recompense by Witlow, Allied Universal loaned money to Witlow.

170.    Witlow has failed and refused to repay Allied Universal amounts loaned to her by

DocuSign Envelope ID: 3BBBF393-5A78-430B-9E47-76A569A34065

Allied Universal.

171.    It would be inequitable for Witlow to retain said benefit without paying the value of it to Allied Universal.

## PRAYER FOR RELIEF

**WHEREFORE**, Allied Universal respectfully requests judgment in its favor and against Defendants as follows:

(a) That Defendants be preliminarily and permanently enjoined from continuing unlawful acts as set out in this Complaint;

(b) That Defendants be enjoined from any further breaches of the Agreements;

(c) That Allied Universal be awarded actual damages resulting from Defendants' wrongful conduct alleged, in an amount to be proven at trial, including treble damages and attorneys' fees and costs under the UDTPA;

(d) That Allied Universal be awarded its attorneys' fees, costs, and other expenses incurred in this action; and

(e) That Allied Universal be granted such other and further relief as this Court deems just and proper.

Dated: October 6, 2023                    Respectfully submitted,


                                          */s/ Kelly E. Eisenlohr-Moul*
                                          Kelly E. Eisenlohr-Moul (FL. Bar No. 1003246)
                                          keisenlohr-moul@martensonlaw.com
                                          Matthew Crawford (PHV motion pending)
                                          mcrawford@martensonlaw.com


MARTENSON, HASBROUCK & SIMON, LLP
500 Davis St.; Ste 1003
Evanston, IL 60201
T: (231)301-1249

F: (404)909-8120                    *Counsel for Plaintiff Allied Universal*

<u>**VERIFICATION**</u>

Personally appeared before the undersigned officer duly authorized to administer oaths, Sady Kelling, Human Resources Director, Florida Region, for Allied Universal, who after being duly sworn, states that the facts contained in this Verified Amended Complaint for Injunctive Relief and Damage are true and correct.

DocuSigned by:

*Sady Kelling*

79F788C0029C451...

_____

Sady Kelling